**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARIANN DOWNING**<br>Collegeville, PA 19426<br><br>***Plaintiff,***<br><br>v.<br><br>**HALDA THERAPEUTICS OPCO, INC.**<br>115 Munson Street<br>New Haven, CT 06511<br><br>and<br><br>**HALDA THERAPEUTICS, LLC**<br>115 Munson Street<br>New Haven, CT 06511<br><br>***Defendants.*** | CIVIL ACTION NO.:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**I. INTRODUCTION**

Plaintiff, Mariann Downing ("Plaintiff"), brings this action against her former employers, Halda Therapeutics OpCo, Inc. and Halda Therapeutics, LLC (collectively, "Defendants"), for discriminating against Plaintiff because of her disability (including history of and regarded as) and for retaliating against Plaintiff because she sought reasonable accommodations for her disability, including medical leaves of absence.

Defendants' unlawful conduct includes subjecting Plaintiff to a hostile work environment, placing Plaintiff on an unwarranted performance improvement plan, and terminating Plaintiff for false and pretextual reasons, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA").

Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II. PARTIES

1. Plaintiff, Mariann Downing, is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Collegeville, PA.

2. At all relevant times, Plaintiff was "disabled" in that she suffered from an impairment, which substantially limited one or more of her major life activities, had a record of impairment and/or was regarded as having such impairment.

3. Defendant Halda Therapeutics OpCo, Inc. is a corporation that maintained a principal place of business at 115 Munson Street, New Haven, CT 06511.

4. Defendant Halda Therapeutics OpCo, Inc. is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

5. Defendant Halda Therapeutics, LLC is a Delaware limited liability company that maintained a principal place of business at 115 Munson Street, New Haven, CT 06511.

6. Defendant Halda Therapeutics, LLC is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

7. At all relevant times, Defendants collectively presented themselves and conducted business as the "alter ego" of one another.

8. Defendants share common ownership, personnel policies, procedures and employment practices. Defendants are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the actions complained of herein.

9. For example, Plaintiff received her W2 tax statement from Defendant Halda

Therapeutics OpCo, Inc. Plaintiff, however, entered into an Award Agreement with Defendant Halda Therapeutics, LLC.

10. At all relevant times, Plaintiff worked remotely from her home office in Pennsylvania.

11. At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

12. At all relevant times, Defendants acted as an employer within the meaning of the statutes which form the basis of this matter.

13. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

## III. JURISDICTION AND VENUE

14. The cause of action which forms the basis of this matter arises under the ADA.

15. This Court has jurisdiction over Count I (ADA) pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. § 1331.

16. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

17. On or about June 17, 2025, Plaintiff filed a Complaint of discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of the acts of discrimination and retaliation alleged herein. That Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto and incorporated herein as Exhibit "1" is a true and correct copy of Plaintiff's agency Complaint (with personal identifying information redacted).

18. On or about July 10, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue pertaining to Plaintiff's agency Complaint. Attached hereto and incorporated herein as Exhibit "2" is a true and correct copy of that Notice.

19. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

20. Plaintiff was hired by Defendants on or about April 10, 2023.

21. Plaintiff consistently performed her job duties in a highly competent manner.

22. Plaintiff worked from her home office in Pennsylvania.

23. Plaintiff last held the position of Director, Project Management.

24. Plaintiff last reported to Kat Kaiser-Brinker, Chief Scientific Officer.

25. Kaiser-Brinker reported to Chris Shade, Chief Executive Officer.

26. On August 24, 2023, in a mid-year performance review meeting with Kaiser-Brinker, Plaintiff received positive performance feedback.

27. On February 5, 2024, after work, Plaintiff was admitted to the hospital and went out of work on a medical leave of absence due to her disability.

28. On February 6, 2024, Plaintiff was diagnosed with stomach cancer.

29. On February 6, 2024, following the above, Plaintiff learned that she would need to undergo surgery in connection with her diagnosis.

30. On February 6, 2024, following the above, Plaintiff told Kaiser-Brinker that she had been diagnosed with stomach cancer and would need to undergo surgery on February 9, 2024, to remove a tumor.

31. Kaiser-Brinker told Plaintiff not to worry about work.

32. On February 9, 2024, Plaintiff underwent surgery to remove a tumor in connection with her stomach cancer diagnosis.

33. From February 6 to 20, 2024, Plaintiff was out of work on a medical leave of absence.

34. On February 20, 2024, Plaintiff returned to work from her medical leave of absence.

35. In or about early March 2024, in a meeting with Kaiser-Brinker and Human Resources, Plaintiff discussed her need for another medical leave of absence, as recommended by her oncologist.

36. Plaintiff stated that the type of tumor that had been removed, which was removed along with twenty percent (20%) of her stomach, was large, and the cells had a fast mitosis rate, meaning they could grow back rapidly. Plaintiff stated that she needed to stay on chemotherapy medication for the next three (3) years with CT scans every six (6) months.

37. On March 11, 2024, following the above, Plaintiff went out on a medical leave of absence in connection with her disability and the side effects of the chemotherapy medication.

38. From March 11 to September 4, 2024, Plaintiff was out of work on a medical leave of absence.

39. On April 23, 2024, in a phone call with Kaiser-Brinker and Paul Erlich, Program Lead Consultant, Plaintiff told them about the side effects that she was experiencing from her chemotherapy medication.

40. On September 4, 2024, Plaintiff returned to work from her medical leave of absence.

41. Plaintiff continued to experience severe side effects from the chemotherapy medication, including nausea, vomiting, diarrhea, headaches, trembling, bone pain, and chronic

fatigue, and she informed Kaiser-Brinker and Erlich of the same.

42. Plaintiff was treated differently and worse, and in a more hostile and dismissive manner, than nondisabled employees and/or employees who had not sought reasonable accommodations for a disability or taken a medical leave of absence.

43. Plaintiff's performance was unjustly criticized.

44. Plaintiff was held to a higher, more stringent standard.

45. Meetings with Plaintiff were cancelled.

46. Plaintiff was interrupted and/or spoken over in meetings.

47. Erlich asked Plaintiff if she had considered retiring or resigning. Plaintiff said no.

48. On or about January 29, 2025, in a meeting with Kaiser-Brinker and Anita Thomas, Human Resources, Defendants placed Plaintiff on a Performance Improvement Plan ("PIP") and gave Plaintiff an unfair performance review.

49. Plaintiff's performance did not warrant a PIP.

50. The PIP was scheduled to last ninety (90) days. The PIP referenced Plaintiff's medical leave of absence and stated that, following her return to work, Plaintiff was "counseled about areas of concern."

51. Plaintiff rebutted the misrepresentations and unjust performance criticisms in her performance review and in her PIP.

52. Plaintiff received only a one percent (1%) salary increase and fifty percent (50%) of her bonus. Plaintiff's performance warranted a higher salary increase and one hundred percent (100%) of her bonus.

53. Plaintiff was, to her knowledge, the only employee reporting to Kaiser-Brinker who was placed on a PIP.

54. Defendants gave Plaintiff an unfair performance review rating, gave Plaintiff only a one percent (1%) salary increase, gave Plaintiff only fifty percent (50%) of her bonus, and placed Plaintiff on a PIP because of her disability and/or her seeking reasonable accommodations for her disability.

55. Defendants failed to remedy or prevent the disability discrimination and retaliation against Plaintiff.

56. On April 23, 2025, in a meeting with Kaiser-Brinker and Thomas, Defendants terminated Plaintiff's employment, effective immediately. The stated reason was that Plaintiff was not performing up to her role.

57. During the termination meeting, Plaintiff complained that, if she was not sick, she would not be terminated. Defendants did not deny the same.

58. Plaintiff was the only employee reporting to Kaiser-Brinker who was terminated on April 23, 2025.

59. Plaintiff was, to her knowledge, the only disabled employee reporting to Kaiser-Brinker.

60. Plaintiff was, to her knowledge, the only employee reporting to Kaiser-Brinker who sought reasonable accommodations for a disability.

61. When Plaintiff was terminated, Defendants retained the following employees directly reporting to Kaiser-Brinker: (a) Kyle Eastman, Executive Director, Chemistry; (b) Chris Forbes, Head of Profiling; and (c) an open position, Head, Biology.

62. Before Plaintiff disclosed her disability and sought reasonable accommodations for her disability, including a medical leave of absence, Plaintiff had no performance or disciplinary issues throughout her employment.

63. Defendants terminated Plaintiff's employment because of her disability and/or her seeking reasonable accommodations for her disability.

64. Defendants subjected Plaintiff to a hostile work environment because of her disability and/or her seeking reasonable accommodations for her disability.

65. Defendants assigned Plaintiff's job duties and responsibilities to nondisabled and/or noncomplaining employees.

66. Plaintiff had no opportunity to remain employed with Defendants.

67. Defendants' disability discriminatory and retaliatory conduct toward Plaintiff has caused her emotional distress.

68. Defendants' conduct evidences a bias against disabled employees and/or employees who seek reasonable accommodations for a disability.

69. The discriminatory and retaliatory conduct of Defendants, as alleged herein, was sufficiently severe and/or pervasive to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

70. Plaintiff's disability and/or her seeking reasonable accommodations for her disability was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff, including, without limitation, in the creation of the hostile work environment to which Plaintiff was subjected and in her termination.

71. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-

esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I - ADA**

72. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

73. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

74. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

75. The conduct of Defendants, as set forth above, was willful, malicious and outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

76. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless this Court grants the relief requested herein.

77. No previous application has been made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of the ADA;

(b) enjoining and permanently restraining the violations alleged herein;

(c) entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(d) awarding damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(e) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(f) awarding punitive damages to Plaintiff under the ADA;

(g) awarding Plaintiff such other damages as are appropriate under the ADA;

(h) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(i) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: 9/21/2026 By: *_/s/ Rahul Munshi_*

RAHUL MUNSHI, ESQ.
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Phone: (215) 545-7676
munshi@consolelaw.com

*Attorneys for Plaintiff*